UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| STEPHEN CARMICHAEL, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Civil No. 04-113-B-W |
| | ) | |
| JEFFREY MERRILL, WARDEN, | ) | |
| MAINE STATE PRISON, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Stephen Carmichael, currently serving a thirty-five-year sentence at the Maine

State Prison following his conviction for gross sexual assault, has filed a petition for

habeas corpus relief pursuant to 28 U.S.C. § 2254.  Carmichael claims numerous

violations of his constitutional rights including, most predominately, that he was denied

effective assistance of counsel at trial and on appeal.  I now recommend that the court

**DENY** Carmichael's petition.

*Background*

**A.**    ***The Procedural History***

On August 6, 1998, the Somerset County Grand Jury returned an indictment that

charged Stephen Carmichael with one count of gross sexual assault in violation of 17-A

M.R.S.A. § 253(1)(A) (Class A).  On August 21, 1998, Carmichael pled not guilty to the

charge at his arraignment.  On December 14, 1998, in the Somerset County Courthouse,

Carmichael's jury trial began. On December 16, 1998, the third day of trial, the jury

returned a guilty verdict.

On July 21, 1999, the trial court adjudged Carmichael guilty as charged and imposed a straight term of imprisonment of thirty-five-years.  On January 4, 1999, Carmichael filed a notice of direct appeal to the Supreme Judicial Court, sitting as the Law Court pursuant to 15 M.R.S.A. § 2115 and former Maine Rule of Criminal Procedure 37.  On June 19, 2000, in a memorandum of decision, the Law Court affirmed the judgment of conviction.  That same date the decision was entered on the Law Court's docket.  On August 3, 1999, Carmichael filed an application to allow an appeal of the sentence of imprisonment pursuant to 15 M.R.S.A. § 2151 and former Maine Rule of Criminal Procedure 40(b).  On November 23, 1999, the Sentence Review Panel of the Supreme Judicial Court denied the application.  Carmichael did not file a petition for a writ of certiorari with the United States Supreme Court, seeking review of the Law Court's denial of the direct appeal. Accordingly, the judgment of conviction became final ninety days after the Law Court's decision was entered on its docket, which was September 19, 2000.

On September 28, 2000, Carmichael filed a collateral pro se state petition for post conviction review pursuant to 15 M.R.S.A. §§ 2121-2129.  After appointment of counsel and an amendment to the original petition, Carmichael ultimately alleged that his trial counsel was ineffective in his representation in eight respects. On February 28, 2003, a testimonial evidentiary hearing was held on the amended petition.  Carmichael's counsel submitted a post-hearing memorandum in support of his amended petition and the State submitted its post-hearing brief.   The court specifically found that counsel was not ineffective in his representation regarding six of the eight issues raised, and that

Carmichael had failed to meet his burden of establishing prejudice with regard to all eight grounds.

On July 30, 2003, Carmichael filed a notice of appeal from the Superior Court's denial of his amended petition. Carmichael submitted a pro se memorandum in support of his request and a pro se sixty-five-page supplemental brief (which he has attached in full as an exhibit to the current § 2254 petition), which sought to allege new facts and raise additional grounds not alleged in counsel's amended post conviction petition.  On February 28, 2003, at the beginning of the post-conviction evidentiary hearing the State moved to exclude this same brief because it had also been filed in that court, without a showing of good cause, more than a year after the court-imposed deadline for further amendments to the pleadings.

At that time Carmichael's counsel represented to the court that Carmichael agreed that he was confining his claims to the amended petition already filed and that he was not asking the court to consider any new claims raised in the Supplemental Brief.  (Post-Conviction Tr. at 4-5.)  Based on that representation, the court ruled that it was not going to consider any new claims raised in the supplemental brief and was only going to consider the claims raised in the amended petition.  (Id. at 5.)

On March 18, 2004, appointed counsel submitted a memorandum in support of the request for a certificate of probable cause to appeal the denial of his amended petition. On May 17, 2004, the Law Court issued an order denying the request for a certificate of probable cause, which order was entered on the Law Court docket on May 19, 2004.  At some point after that, Carmichael prepared and signed the instant 28 U.S.C. § 2254 petition and filed it in this Court on July 12, 2004.

**B.      *Carmichael's Criminal Case***

Carmichael's criminal case involved an allegation of forcible rape.  The victim and Carmichael met at the Bob-In, a tavern in Waterville, Maine.  Following closing time at the tavern, the pair went to the victim's apartment.  At approximately 4:00 a.m. that same morning the victim arrived at a local hospital complaining of injury to her face, arm, and rectum and sexual assault.  Carmichael maintained that any sexual act was consensual in nature.  The jury apparently did not believe him.

At the time of the sentencing it was noted that Carmichael had two prior, and similar, convictions for sexual assault/rape, one in Maine and one in Pennsylvania.  He was on parole on the Pennsylvania charges at the time of these events.  Carmichael also had a prior conviction for aggravated assault involving physical injury to a female victim.  The court, finding him to be "a threat to society," sentenced Carmichael to thirty-five-years in prison.  (Sentencing Tr. at 46.)

### Discussion

Carmichael has filed a 28 U.S.C. § 2254 petition with this court that recites "two grounds."  In the first ground Carmichael merely references the two exhibits attached to his petition.  Those exhibits consist of first, and foremost, a copy of the sixty-five page supplemental brief that Carmichael filed with the Maine Law Court when he tried to obtain a certificate of probable cause to allow an appeal from the Superior Court decision denying his request for post-conviction relief.  The exhibits also consist of a detailed critique of his post-conviction counsel's handling of each of the eight grounds that were raised by way of the post-conviction proceeding. Ground Two of the § 2254 petition

claims that the Law Court committed "obvious error" when denying him a certificate of probable cause to pursue an appeal of his state-post conviction proceeding.

Carmichael's § 2254 petition cannot be granted unless the state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in[Supreme Court] cases[,]" or (2) "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. The import of this distinction is that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Mello v. DiPaulo, 295 F.3d 137, 142 -43 (1st Cir. 2002). The State's entitlement to deferential § 2254 review does not turn on citation to a Supreme Court case; "indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).

With respect to the post-conviction court's factual determinations,

> **(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
> **(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> > **(A)** the claim relies on—
> > > **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> > **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e).

Also of import to the resolution of Carmichael's claims is § 2254(b)(1)(A)'s prerequisite to federal habeas review, the fact that this court can only grant federal relief on federal constitutional claims that Carmichael has fully exhausted in the courts of the state. "Accordingly, the decisive pleading is the application for further appellate review, and [I] must determine whether the petitioner fairly presented the federal claim to the [Maine Law Court] within 'the four corners' of that application." Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997). Exhaustion "requires that the issue be presented 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Fortini v. Murphy, 257 F.3d 39, 44 (1st Cir. 2001) (quoting Scarpa v. DuBois, 38 F.3d 1, 6 (1st Cir.1994)).

I construe Carmichael's federal habeas corpus petition as raising a federal question as to whether the Maine court unreasonably applied the Strickland ineffective assistance of counsel standard to a myriad of claims against counsel arising during his trial, appeal, and post-conviction proceedings.  With respect to Carmichael's claims that counsel was ineffective, the First Circuit addressed the standard for such a claim in the context of § 2254 review in Mello:

> To demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, Mello must establish (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); see also Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir.1994). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

295 F.3d at 142.

### A.      *The Procedurally Defaulted Claims*

To the extent that he is trying to raise grounds from his sixty-five-page pro se supplemental brief to the Superior Court that were not included in the amended petition prepared by counsel, Carmichael has procedurally defaulted those claims. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 729, 750 (1991). At the outset of the post-conviction evidentiary hearing, Carmichael's counsel, after conferring with him, represented that the supplemental brief should be viewed only as written support for the eight grounds actually alleged in the amended petition. Carmichael, who was present, did not dispute that representation. (Post-conviction Tr. at 4-5).  Moreover, to the extent that any of Carmichael's ineffective assistance of counsel claims were not raised in his memoranda to the Law Court in support of a certificate of probable cause to challenge the denial of his amended petition -- whether prepared by

counsel or by him -- those claims are also procedurally defaulted.  See O'Sullivan v. Boerckel, 526 U.S. 838 (1999) (failure to seek available discretionary state appeal from denial of claim constitutes procedural bar to federal habeas review of claim).  And, to the extent that he seeks to do so, Carmichael cannot establish that his procedural default should be excused by arguing that his post-conviction counsel was ineffective.  See Matchett v. Dretke, 380 F.3d 844, 849 (5th Cir. 2004) ("We have repeatedly held that ineffective assistance of state habeas or post-conviction counsel cannot serve as cause for a procedural default."); Custer v. Hill, 378 F.3d 968, 974 (9th Cir. 2004) (observing that there is no constitutional right to appointment of counsel in state post-conviction proceedings and that any ineffectiveness of an attorney in the post-conviction process is not considered cause for the purposes of excusing the procedural default).[1]

Carmichael's lengthy and confusing pro se pleadings make it difficult to ascertain exactly what these defaulted claims actually are, but they appear to relate to counsel's performance vis-à-vis appeal, sentencing, and perhaps other matters.  (See Post-conviction Tr. at 4-6.)  To the extent the State is arguing that any of the eight claims of ineffective assistance properly raised during the post-conviction proceeding were subsequently procedurally defaulted because they were not mentioned by counsel in the attempt to obtain a certificate of probable cause to proceed with the appeal, I am not adopting the State's position.  The issues raised during the appellate phase of the post-conviction proceedings shifted somewhat because the Law Court had before it post-conviction counsel's original notice of appeal, filed July 30, 2003, Carmichael's pro se

---

[1]      Carmichael is also not entitled to § 2254 relief on any straight-up claim that his post-conviction counsel was ineffective. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

supplemental brief, filed August 14, 2003, and finally, a memorandum in support of the

certificate of probable cause, filed by new counsel on March 18, 2004.  Taken

collectively, I will treat these documents as preserving all eight of the factual claims of

ineffective assistance that the Superior Court addressed during the post-conviction

evidentiary hearing and raising as an additional issue the question of whether the

Superior Court applied the proper standard under <u>Strickland</u> when it denied post-

conviction relief.

**B.     *The Ineffective Assistance Claims that Were Raised in State Court***

In his amended petition for post conviction review filed in State court, Carmichael

raised the following eight factual claims regarding his trial counsel's ineffective

assistance:

> 1.  Counsel failed to make appropriate use of witnesses for impeachment purposes.
> 2.  Counsel failed to use the evidence of witness Mary Ann Babbit regarding prior statements made by the alleged victim and counsel allowed the two other witnesses to testify to "excited utterances" made by the victim that could have been excluded upon proper objection.
> 3.  Counsel failed to call an expert to testify vis-à-vis the victim's level of intoxication.
> 4.  Counsel did not frame a proper objection to the use of "mug shot" identification photos taken of Carmichael at the time of an earlier arrest.
> 5.  Counsel allowed the use of two "sanitized" prior rape convictions for impeachment purposes.
> 6.  Counsel did not properly prepare for or present an effective cross-examination of the State's medical witness, Dr. Chapin, who examined the victim at the hospital following the incident.
> 7.  Counsel did not properly prepare for Carmichael's testimony and did not have any way to present his version of consensual sex without calling him as a witness.
> 8.  Counsel was ineffective in his use of DNA and chemical testing reports.

Following a lengthy evidentiary hearing the court made certain factual determinations

about each of the claims, ultimately concluding that as to two of the claims counsel's

performance was deficient, but that there was no reasonable probability that the outcome would have been different had counsel performed otherwise. (Super. Ct. Dec. at 14-15.)

## 1.  The factual findings

Ground One relates primarily to the alleged victim's penchant for "rough sex" and the post-conviction court found that trial counsel was able to get into evidence through two witnesses that the victim liked to be slapped during sex.  (Id. at 2.)  The trial court prohibited any further inquiry on this issue.  The post-conviction court concluded that it was not ineffective for trial counsel not to try to impeach the victim's testimony regarding whether she liked to be slapped during sex and attempt to admit such additional evidence of "rough sex" "through the backdoor for the purpose of proving a prior inconsistent statement." (Id.)  Furthermore, the trial court found as a fact that there was no "definitive" evidence that the victim had other sexual partners on the evening in question and therefore there was no admissible evidence of other sexual partners as the source of her injuries, ergo counsel was not deficient in failing to introduce such evidence or, more properly, in failing to attempt to introduce inadmissible speculation.  (Id. at 3.)

The post-conviction court likewise found that Carmichael's Ground Two had no merit.  As to the victim's "excited utterances" the post-conviction court noted that trial counsel attempted to have those statements excluded, only to have the trial court overrule his objections.  (Id. at 4.)  As to the defense witness, Mary Ann Babbit, the statement that the victim said, "I'm going to get him for rape anyway," was admitted into evidence at trial.  (Trial Tr. at 278.)  The court found that this ground was without merit.

The post-conviction court considered Ground Three as well and concluded that Carmichael's attorney was able to make a meaningful argument regarding the victim's

intoxication on the night before to explain the significance of a .175% blood alcohol test taken the next morning without the use of an expert.  (Super. Ct. Dec. at 5.)  The court concluded that "it was not necessary for petitioner's attorney to hire an expert to argue that she was drunk."  (Id. at 5.)

Grounds Four and Five, relating to the use of the police mug shot and the use of prior convictions without a limiting instruction, proved more problematical for the post-conviction court.  The court determined that identity was not an issue in the underlying criminal case and that the attorney should have objected to the mug shot photo identification array being admitted into evidence.  The court concluded that an ordinary fallible attorney would have at least prevailed upon the court to "sanitize" the photo lineup in order to conceal the characteristics that identified the Carmichael's photo as a mug shot (id. at 5-6), but ultimately reasoned that counsel's failing did not affect the outcome of the trial. (id. at 16).  While rejecting a number of the arguments concerning the use of the "sanitized" prior rape convictions for impeachment purposes, the court concluded that counsel's failure to request a limiting instruction to the jury was deficient performance.  (Id. at 8.)  It likewise concluded that failing did not affect the outcome of the trial.  (Id. at 16.)

The sixth, seventh, and eighth grounds of the state petition all related to trial counsel's preparation and courtroom presentation.  The post-conviction court found that trial counsel's testimony regarding the amount of time he spent preparing for trial to be credible and the tactical decisions counsel made regarding his witness examinations were within the competency of ordinary fallible attorneys.  (Id. at 10-12.)

Pursuant to 28 U.S.C. §2254 (e) these factual findings, including the findings that pertain to Carmichael's trial counsel's inadequate performance, are presumed to be accurate. Carmichael has certainly not presented clear and convincing evidence to establish the inaccuracy of any of the factual findings made by the trial court. Furthermore, a review of the testimony presented at the evidentiary hearing, including the testimony of trial counsel himself, establishes that there is evidentiary support for each of the factual conclusions.

**2. The application of the <u>Strickland</u> standard**

Both of Carmichael's court-appointed attorneys during the post-conviction phase of this case attempted to raise before the Law Court what they viewed as the Superior Court's erroneous application of the second prong of the <u>Strickland</u> standard. In her Notice of Appeal, post-conviction trial counsel claimed that the post-conviction justice used the wrong standard when he reasoned that Carmichael "failed to establish that the deficiencies of the attorney . . . would have affected the outcome of the trial." She alerted the Law Court to her belief that under the proper 'reasonable probability" standard, the justice below should have granted post-conviction relief. Likewise, successor counsel, in his memorandum in support of a request for a certificate of probable cause, raised as his first issue, 'Whether the Court (Jabar, J.) applied the correct standard in issuing an Order denying petition for post-conviction review ?" (Pet's. Mem. at 1.) Counsel explained that, in his view, the mathematical standard the court should have applied was: Was there merely an 8.3 % chance that one juror would have reached a result other than guilty but for the unprofessional conduct? (<u>Id.</u> at 2.) Lest there have been any confusion as to counsel's intent by this argument, he later cited to <u>Wiggins v. Smith</u>, a death penalty

case wherein the Supreme Court granted habeas relief and reiterated that when counsel's conduct falls below the accepted standard of competence, the court should determine whether the suspect evidence "might well have influenced" the jury.  539 U.S. 510, 538 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 398 (2000)).

It is true that the state court post conviction judge at one point in his opinion said that the test was whether the deficient performance "likely deprived defendant of an otherwise substantial ground of defense." (Sup. Ct. Dec. at 13, 14-15).  Standing alone, that phraseology suggests that the court applied a standard contrary to the reasonable probability standard of Strickland, indisputably the applicable clearly established law under United States Supreme Court precedent.  However, the state court cited State v. Brewer, a case that clearly holds the applicable standard under Maine law to be the Strickland "reasonable probability" standard.  1997 ME 177, ¶ 32, 699 A.2d 1139,1147; see Brewer v. Hagemann, 2001 ME. 27, ¶9, 771 A.2d 1030, 1033; Kimball v. State, 490 A.2d 653, 656 (Me.1985); see also Mello, 295 F.3d at 144 (observing that the Strickland and Massachusetts standards are the "functional equivalent" for purposes of proceeding with the § 2254(d)(1) determination).

It is not this court's role to evaluate the phraseology used in the state court proceedings, but rather to assess whether the result obtained was an unreasonable application of federal law.  See Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (observing that a state court's decision is not contrary to clearly established federal law simply because the court did not cite a Supreme Court decision; a state court need not even be aware of Supreme Court precedents "'so long as neither the reasoning nor the result of the state-court decision contradicts them'") (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

13

In this case neither the court's reasoning nor its result contradicts the <u>Strickland</u> standard and therefore this court should proceed no further.

### Conclusion

Based upon the foregoing, I recommend that the court **DENY** the petition.

<u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.


/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 3, 2005.